[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows: CT Page 10099
The Plaintiff and Defendant, whose maiden name was Conlin, intermarried at Old Lyme, Connecticut on April 5, 1992; that the Plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there is one minor child issue of the marriage, Breanna; that the parties had been married before; that there were two minor children issue of the parties' first marriage, Kyra and Shaun; that no other minor children were born to the Plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably and that there is no hope of reconciliation.
Each party had a different opinion of why the marriage broke down. Plaintiff claims that the Defendant was physically and mentally abusive to her and the children; that Defendant had no ongoing relationship with their son, Shaun; that the Defendant drank excessively and that she left the marital residence as Defendant was becoming more threatening.
The Defendant claims that Plaintiff accused him of infidelity; that she posted posters depicting Defendant unfavorably at R.R. Donnelly, Defendant's employer; that as a result of same, Defendant was fired; that Plaintiff destroyed his equipment, slashed tires on his equipment, that Plaintiff put sugar in his gas tank and that she again interfered with his landscaping business, resulting in a decrease of his business, and that Plaintiff failed to keep the marital home in a clean condition.
Defendant admitted he started going to Alcoholics Anonymous about one month ago.
Plaintiff stated that the parties' first marriage broke up because of Defendant's physical and mental abuse.
Plaintiff was born January 8, 1959. She appears to be in good health and is employed 32 hours per week as a certified nursing assistant at Gladview Health Center, Old Saybrook, Connecticut. She had a gross weekly wage of $245.88 and a net weekly income of $179. However, because of daycare costs for Breanna of $90 per week, her take home is actually $89 per week.
The Defendant was born July 8, 1959. Although he claims to be in good health, Defendant suffers from Hodgkinson's Disease, a CT Page 10100 form of cancer. The Defendant has a high school diploma and served 6-1/2 years in the U.S. Army. As a result of his career, Defendant receives a disability compensation of $167 per week during his lifetime.
When the parties married in 1992, the Defendant was employed at R.R. Donnelly as an assistant bindery operator. As previously stated, he was employed there for five years, when he was fired for reason previously stated. However, Defendant acknowledges that another reason for his discharge might be due to the fact that he told his employer what he thought of it.
When Defendant was discharged, he withdraw his investment in his retirement. Defendant received $7,000, which he claims was used to pay marital bills. Plaintiff denies knowledge of this when it occurred, but she admitted that the money was probably spent to pay the bills.
Defendant started a landscape business in 1992. It seemed to be successful until Plaintiff started interfering with it. Presently, Defendant claims he has a gross weekly income of $400 with a net weekly income of $320. This, together with his disability income, gives Defendant a net weekly income of $487.
In 1993, the parties purchased the marital home at 60 Boston Post Road, Old Lyme, Connecticut. No down payment was made as the parties obtained a VA mortgage.
Presently there is no equity in the property. The mortgage is $5,000 in arrears and there is a strong probability that a foreclosure action will begin.
The remaining assets of the parties will, if necessary, be included in the court's orders.
Based on the above, it is clear that the marriage of the parties has irretrievably broken down without any hope for reconciliation. Defendant finds that the parties have equally contributed to the breakdown of their marriage by their actions and behavior.
After considering all of the factors in Connecticut General Statutes §§ 46b-61, 46b-62, 46b-81, 46b-82 and 46b-84, in light of the evidence and my findings and the taxable CT Page 10101 implications and consequences of my orders, judgment is entered dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered:
1. No order is issued to the title of the marital property. However, the Plaintiff shall have exclusive possession daily from 4:00 p. m. to 8:30 a.m. The Defendant shall have exclusive possession daily from 8:30 a.m. to 4:30 p. m. Each party shall share equally the mortgage, taxes, insurance and other expenses relating to the premises.
2. The parties shall have joint custody of the minor children with primary custody to the Plaintiff. The Defendant shall have reasonable rights of visitation except that, for the present, his visitation with the youngest child, Breanna, shall be supervised by Carrie Szobille, a cousin of the Defendant. Further, the Defendant is to be alcohol free during his visitations with the children.
3. The Defendant shall pay to Plaintiff support for said minor children of $207 per week.
4. The parties shall maintain health insurance as is available through their employment for the benefit of the minor children. Each to share equally the premium for costs for the insurance and each shall share equally the unreimbursed medical and dental bills.
5. The Defendant shall pay to the Plaintiff one dollar ($1) per year for three years, non-modifiable as to term only. Said alimony shall terminate on Plaintiff's marriage, death or cohabitation, whichever is the first to occur.
6. The Defendant shall transfer to the Plaintiff all interest he has in the 1992 Plymouth Voyager. Plaintiff shall hold the Defendant harmless on any indebtedness presently on said vehicle. The Defendant shall keep his 1986 Ford, 1981 GMC, his business tools and equipment.
7. The Defendant shall pay all the debts listed in his financial affidavit except the PNC Bank car loan. The Plaintiff shall pay all the debts listed in her affidavit and the PNC Bank car loan on the Voyager.
Each party shall hold the other harmless from any claims CT Page 10102 on the obligations of the other.
8. Each party shall pay their own attorney's fee.
Vasington, JTR